## Case No. 8,013.

### LAMB et al. v. CARTER et al.

[1 Sawy. 212.][1]

Circuit Court, D. Oregon. June 28, 1870.

OREGON DONATION ACT — POSSESSORY RIGHTS — COVENANT TO ACQUIRE TITLE—ESTOPPEL.

1. On February 26, 1860, Daniel H. Lownsdale, being the owner of an undivided interest in the west half of the Portland land claim, including block 258, in said city, commonly called the "Nancy Lownsdale Tract," under the donation act of September 27, 1850 (9 Stat. 497), executed a bond in the penal sum of $700 conditioned as follows: Whereas, I have this day sold, released and quitclaimed unto Robbins, his heirs and assigns, etc., all that piece or parcel of land, described by metes and bounds, the same being block 258 aforesaid; and, whereas, said Robbins has made his promissory note to said Lownsdale, or order for the balance of the purchase money, payable in twelve months from date: "Now, know ye also, that if said note shall be truly paid, and I, the said bounden Lownsdale, shall give unto said Robbins a good and sufficient title to said land according to these presents, and such further confirmation as the title from the United States may vest in me, then this obligation to be null and void; otherwise," etc.: *Held*, that such instrument was in effect a contract of sale of Lownsdale's interest in the block 258, and also a covenant to make a good title to the whole land contained therein, and that the heirs of said Lownsdale were thereby estopped in equity from asserting any interest in said block, as such heirs.

2. Under a decree partitioning that portion of the Portland land claim, called the "Nancy Lownsdale Tract," between her children and the heirs and vendees therein of Daniel H. Lownsdale—three fifths to the former and two fifths to the latter in gross—the heirs of said Daniel H. can only claim as heirs, and not as purchasers, and are therefore estopped to claim any interest thereby in any specific portion of said two fifths against the agreement or covenant of their ancestor, the same as he would be, if living.

[This was a suit in equity for partition of certain real estate in the city of Portland, Or., brought by John R. Lamb and Emma, his wife, and Ida Squires, heirs of Nancy Lownsdale and D. H. Lownsdale, against T. J. Carter, Isaac B. Smith, and the following heirs, other than plaintiffs, of D. H. Lownsdale, J. P. O. Lownsdale, Millard O. Lownsdale (by guardian), Ruth A. Lownsdale (by guardian), Mary E. Cooper, Hiram Smith, and Hannah Smith. The case is now heard upon demurrer to the bill.]

W. Lair Hill, for complainant.
Charles Gardener, for defendants.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

DEADY, District Judge. This suit was brought December 31, 1869, for a partition of block 258 in the city of Portland, and for an adjustment of a lien thereon for owelty, heretofore paid by certain of the defendants in a suit for partition of a tract of land including the premises, between the children of Nancy Lownsdale and the heirs and vendees of her husband Daniel H. Lownsdale. The plaintiffs, John R. Lamb and Emma, his wife, and Ida Squires, her sister, are citizens of Kentucky. The defendants are citizens of Oregon; and except T. J. Carter and Isaac B. Smith, are united in interest with the plaintiffs, and make no defense to the bill. The defendants, Carter and Smith, demur to the bill, and for cause of demurrer assign, substantially, that the plaintiffs have no interest in the premises.

From the bill it appears that Daniel H. in his lifetime, and at and after September 27, 1850, occupied a certain tract of land upon which the city of Portland is partially built, and which includes the premises in controversy, as a settler, under the donation act of September 27, 1850 (9 Stat. 497); and that on April 15, 1854, Nancy, the wife of Daniel H., died intestate, leaving said Daniel H. and William Gillihan and Isabella Ellen Gillihan, her children by a former husband, and Millard O. and Ruth A. Lownsdale, her children by Daniel H., surviving her; and that afterwards, in pursuance of said donation act, the west half of said tract, being about ninety acres, and now commonly known as the "Nancy Lownsdale Tract," and embracing the premises in controversy. was duly set apart by the proper officers of the United States land office to said Nancy; and that on June 6, 1865, the United States issued a patent purporting to grant said Nancy Lownsdale tract, including said block 258, to the said Nancy and her heirs in fee simple. That upon the death of said Nancy, said Daniel H., by operation of said donation act, became seized of an undivided one fifth of said tract, and her children aforesaid of an undivided one fifth thereof each, in fee simple; and that on January 27, 1860, the said Daniel H. became the owner by purchase of the aforesaid one fifth of Isabella Ellen Gillihan, then married to William Potter.

That on February 14, 1860, said Daniel H. conveyed an undivided two fifths of the aforesaid one fifth purchased from said Isabella Ellen, to Hannah M. Smith; and that on February 26, 1861, he executed and delivered to George C. Robbins, a bond for a deed to his undivided interest in said block 258; and that on November 8, 1861, said Robbins sold his interest in said block, and duly assigned said bond to the defendant Smith.

That on May 4, 1862, said Daniel H. died intestate, leaving the plaintiffs, Emma Lamb and Ida Squires, and the defendants, J. P. O. Lownsdale, Ruth A. Lownsdale and Mary E. Cooper his only heirs at law, the said Emma and Ida being the children of Sarah M. Squires, a deceased daughter of said Daniel H., and the others being his children.

That on May 22 and August 12, 1865, in a suit brought for the partition of said Nancy Lownsdale tract by said William Gillihan against said Isaac B. Smith and others, including all the parties hereto, except T. J. Carter, decrees for partition and payment of owelty were duly given by the circuit court of the state, and for the county of Multnomah; and that by said decree it was determined that two fifths of said tract had belonged to said Daniel H. in his lifetime, and that the other three fifths belonged to said William Gillihan and Millard O. and Ruth A. Lownsdale; and that certain portions of said tract were set apart in severalty to said William, Millard O. and Ruth A., and the remainder of said tract was set apart in gross to the heirs or vendees of said D. H. L., according to their respective interests, whatever they might be; and because of the inequality in quantity and value of such partition as between the children of Nancy Lownsdale and the heirs and vendees of Daniel H., said circuit court by its decree provided that the portion or parcels allotted to the latter should pay to the former the gross sum of $39,156.02 owelty, to be distributed among said parcels, in proportion to their respective value, and that $1,259.61 of said sum was assessed upon said block 258, and made a lien thereon, which amount the said defendant Smith afterwards paid with interest.

The effect of this partition upon the ownership of the parcels allotted to the heirs or vendees of Daniel H. was duly considered by this court in Fields v. Squires [Case No. 4,776]. It was then held that the three fifths interest in any particular parcel of which the children of Nancy were divested by the decree of partition, was by the same means vested in the heirs of Daniel H., and not in his previous vendees of all or any portion of said parcel. In other words, the heirs of Daniel H. gave up their two fifths interest in the parcels allotted to the children of Nancy, and received in exchange therefor the three fifths interest of the children in the remaining parcel or portion of the tract, and because of inequality of such partition, the owelty was given to such children, and made a lien upon such three fifths interest as a security for its payment.

The vendees of Daniel H. neither gained nor lost by the partition. Neither did his heirs, unless by some covenant of their ancestor, they should be estopped to claim this three-fifths interest in some particular parcel or block which was allotted to them in exchange for their two fifths interest in the portions of the tract allotted to the children of Nancy. As Daniel H. only had two fifths interest in the Nancy tract, when he sold or conveyed away any specific portion of it

—as block 258—the purchaser by means of such sale, release, or quit claim only acquired such two fifths of such parcel.

It also appears that the interest conveyed by Daniel H. to Hannah M. Smith, was on February 13, 1869, purchased by the defendant J. P. O. Lownsdale, from said Hannah and Hiram, her husband; and that the defendant Carter has become the assignee and grantee of the interest acquired by Isaac B. Smith in the east half of the premises, to wit, lots 1, 2, 3, and 4.

Upon this state of facts, the plaintiffs claim that the defendants Smith and Carter as assignees of Robbins, are entitled in equity to the interest which Daniel H. had in this block at the date of the bond to Robbins, which was eight twenty-fifths, and that J. P. O. Lownsdale is entitled to the interest conveyed to Hannah M. Smith, which was two twenty-fifths, but that the remaining three fifths belonged to the heirs of Daniel H., and was acquired by them after the death of their ancestor in exchange for their two fifth interest in other portions of the Nancy Lownsdale tract, allotted to the children of said Nancy.

The defendants, Smith and Carter, rest their denial of any interest of the plaintiffs in the premises upon the legal effect of the bond of their ancestor to Robbins, and maintain that the question turns upon the proper construction to be given to that instrument.

The bond is in the usual form, and in the penal sum of $700, conditioned as follows: "Whereas, I have this day sold, released and quitclaimed unto Robbins, his heirs, assigns, etc., all that piece or parcel of land within the corporated limits of the city of Portland, etc., and particularly described as follows—(here follows a description of the premises in controversy by metes and bounds)—together with all and singular, the appurtenances thereunto belonging, to their own use and benefit forever."

Then follows a statement of the consideration of the sale, to the effect that $600 was paid in hand, and that the remaining $100 was to be paid in twelve months, according to the tenor of a certain promissory note of said Robbins, payable to said Lownsdale order, and recited at length in the condition.

"Now know ye also that if said note shall (not) be truly paid, and I. the said bounden Lownsdale, shall give unto the said George C. Robbins a good and sufficient title to said piece of land according to these presents, and such further confirmation as the title from the United States may vest in me, then this obligation shall be null and void, otherwise to remain in full force and virtue."

On the argument, it was admitted by counsel for the plaintiff that the word "not," in the condition of the bond, (which I have enclosed in brackets) is a clerical mistake, and should be rejected by the court as mere surplusage.

Stripped of its excessive verbiage and

awkward use of technicalities, the intention and legal effect of this instrument are apparent. It is a contract of sale, with an agreement or covenant, under a penalty equal to the purchase money, upon the part of the vendor, to make title to the thing sold, upon the payment of the remaining $100 of the purchase money. The sale, release and quitclaim of block 258 did not of itself give the purchaser, Robbins, any interest or right to an interest therein, beyond the 8-25 then owned by Daniel H. But if the latter, in addition to the sale, etc., also covenanted with Robbins or his assigns, to make him or them a good and sufficient title to the said piece of land, then he and those claiming under him are estopped to claim anything in the premises to the contrary.

That is this case: The condition of this bond contains in legal effect an agreement or covenant upon the part of Daniel H. with Robbins and his assigns, to make the latter a good and sufficient title, not merely to his present interest in the premises, but to the said piece of land.

Two objections were made in the argument of counsel for plaintiffs to this construction of the condition of the bond. First, that the covenant therein of Daniel H. only bound him to make title to the premises "according to these presents," and that "according to these presents" must be construed to mean according to the terms of the sale, that is—"sold, released and quitclaimed," and as only 8-25 were sold, etc., then the covenant for title would not extend to the subsequently acquired three fifths interest. The result of this construction would give the words, "according to these presents," the effect to qualify the general covenant for title into a mere covenant for title to the interest which Daniel H. then had, be it more or less.

It seems to me that this would be to disregard the plain intention of the parties, as expressed in the writing. and that, too, by giving a strained effect to a mere formal phrase which was probably inserted in the instrument as a mere matter of form. If it has any significance, it can mean nothing more or less than "according to the terms of this instrument." Now, what are the terms of the instrument? That Robbins had purchased the piece of land in question and paid $600 of the purchase money, and was to pay $100 more, upon the payment of which last sum, Daniel H. was to make Robbins or his assigns a good and sufficient title to said piece of land. The second ground of objection is, that the covenant to make "such further confirmation as the title from the United States may vest in me," is inconsistent with the idea, that Daniel H. was then the sole owner of the property and intended to covenant to make title to the whole interest therein. I do not see the force of the objection. Besides, if we are

to indulge in conjectures upon this subject, it will readily occur to any one who will consider the circumstances, that Daniel H. being the owner of a two fifths undivided interest in a large tract of land, might sell a small parcel thereof by metes and bounds, and covenant to make a good title thereto, upon the reasonable expectation, that in the partition with his deceased wife's children he could and would arrange to have such small parcel allotted to himself in severalty. The reason for inserting the covenant concerning the title of the United States was probably this: At the date of the transaction, the patent for the land had not been issued, and it is likely that Daniel H. or Robbins, or both of them, had some impression, that when the patent did issue to Daniel H., as expected, it would be prudent or necessary for the latter to confirm any title which he might have made to the premises before the issuance of the patent.

In the disposition of other cases heretofore decided in this court, which involved the question as to the effect of this partition between the children of Nancy and the heirs and vendees of Daniel H., it was assumed, without particular investigation or argument, that the children of Daniel H. took the three fifths interest which was allowed to them in sundry blocks or parcels of the whole tract, for instance—as in block 258—as his heirs, and were therefore bound by his acts or covenants in relation to such blocks or parcels. The correctness of this conclusion is now questioned by counsel, and it is suggested, that the children of Daniel H. received three fifths interest in any of these particular blocks or parcels allotted to them, not from their father, but from the children of Nancy, in exchange for the two fifths interest which they owned elsewhere in the general tract and surrendered to the children of Nancy.

As the question has not now been specially argued, I will simply state the ground upon which it appears to me that the children of Daniel H. ought to be considered as taking this three fifths interest as his heirs, and leave it open for further consideration whenever it may arise.

The undivided interest of the children of Daniel H. in the Nancy tract being inherited from him, its character in this respect was not changed by the partition and allotment. In the partition suit, these children claimed as the heirs of Daniel H., and whatever was allotted to them as his heirs, they hold or claim as his heirs. They acquired no new title by the partition, but only ascertained by means of the judicial proceedings in what portion of the general tract their particular interest was. In contemplation of law, the particular tract allotted to them by the decree of partition was the very land which they inherited from their ancestor. Before that time, being tenants in common, as Blackstone says, "they all occupy promis-

cuously," "because none knoweth his own severalty." 2 Bl. Comm. 191.

It appearing, then, that in equity, the plaintiffs are estopped to claim any interest in the block in controversy, as against the defendants Smith and Carter, on account of the covenant of their ancestor to make a good and sufficient title to the same, their demurrer to the bill is sustained.

[NOTE. For another case previously decided, in which the same plaintiffs upon a different state of facts were successful in asserting their interest as heirs of Nancy Lownsdale against other claimants under D. H. Lownsdale, see Lamb v. Starr, Cases Nos. 8,021, 8,022. For other suits brought by same plaintiffs as part heirs of D. H. Lownsdale and against certain other and various claimants. see Cases Nos. 8,012. 8,017, 8,024, 8,015, 8,023.]